IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LAURA BROWN,[1] | § | |
| | § | |
| Respondent Below, | § | No. 385, 2018 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | C.A. No. 18I-01286 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: December 14, 2018
Decided: December 17, 2018

Before **STRINE**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices

# **O R D E R**

After consideration of the appellant's opening brief, the State's answering brief, and the record below, it appears to the Court that:

(1)    The appellant, Laura Brown, has a history of mental health issues. On April 19, 2018, a Dover police officer completed a request for a twenty-four-hour emergency detention of Brown under 16 *Del. C.* § 5004. The officer reported that Brown had been in a Target store "for over 2 hours, talking to herself and screaming. She stated that everyone is out to get her and wants to kill her. She has been combative with officers and nursing staff. Her action put her and others at risk." A

---

[1] The Court has assigned a pseudonym to the appellant.

mental health screener evaluated Brown and observed that she was depressed, manic, very angry, delusional, paranoid, and experiencing auditory and visual hallucinations. The screener concluded that Brown's altered mental status placed her at a high risk of harm to self or others, and that she needed further psychiatric evaluation.

(2) Following her twenty-four-hour emergency detention, Brown was provisionally admitted to Dover Behavioral Health System Hospital. Dr. Khaled Mirza completed a certificate for provisional hospitalization. The certificate stated that Brown was diagnosed with "schizoaffective disorder, bipolar type, most recent episode manic." It concluded that Brown was a danger to herself and others because, among other things, she was manic, psychotic, paranoid, and delusional; thought that people were out to get her; and stated that she would defend herself. Dr. Mirza also completed affidavits in support of involuntary inpatient commitment and involuntary outpatient treatment, each of which made similar observations and conclusions.

(3) On April 25, 2018, the State filed a complaint seeking involuntary inpatient commitment and involuntary outpatient treatment, relying in part on the psychiatrist's affidavits. After an April 27, 2018 probable cause hearing and later a May 4, 2018 "8-day hearing," a Superior Court Commissioner ordered Brown's

continued involuntary inpatient commitment and involuntary outpatient treatment. Brown's next hearing was scheduled for July 20, 2018.

(4) On May 16, 2018, Brown was discharged from involuntary inpatient treatment to begin involuntary outpatient treatment.

(5) On May 21, 2018, a Dover police officer completed another request for a twenty-four-hour emergency detention of Brown. The officer reported that Brown had refused to leave a store and was making statements that did not make sense. A mental health screener evaluated Brown and observed that she was severely delusional and paranoid, extremely aggressive, and disoriented; had attempted to strike a nurse; and had stated, "I feel like killing someone."

(6) On May 24, 2018, Dr. Nadeem Afzal completed a certificate for provisional hospitalization, and on May 25, 2018, Dr. Afzal completed affidavits in support of involuntary inpatient commitment and involuntary outpatient treatment. These documents reflect Dr. Afzal's conclusions that Brown was "very psychotic and very manic," paranoid, "hostile, aggressive and even threatening," with "impaired insight and judgment." Dr. Afzal further stated that Brown had been noncompliant with medication and that without medication "her state deteriorates," "she is unlikely to survive in the community," and she posed a threat to herself and others.

(7) On May 29, 2018, the State filed a complaint seeking involuntary inpatient commitment and involuntary outpatient treatment, relying on the police officer's 24-hour detention form and the psychiatrist's affidavits, among other things. After a May 29, 2018 probable cause hearing and later a June 6, 2018 "8-day hearing," a Superior Court Commissioner ordered Brown's continued involuntary inpatient commitment and involuntary outpatient treatment. Brown's next hearing was scheduled for August 29, 2018.

(8) On June 12, 2018, Brown was again discharged from involuntary inpatient treatment to begin involuntary outpatient treatment.

(9) On June 26, 2018, Brown requested that the Superior Court hold a hearing sooner than her then-scheduled August hearing, because she did not want to continue the injectable medications that she was receiving as part of her involuntary outpatient treatment. The Superior Court granted the request, scheduling a hearing for July 20, 2018. Dr. Capiro testified at the July 20 hearing regarding Brown's history and diagnoses and her noncompliance with oral medications. He testified that Brown needed to stay on injectable medications and that outpatient commitment was the least restrictive alternative for Brown to receive the needed treatment. At that hearing, Brown told the Commissioner about the negative effects that the injections had on her, including a "creepy crawly feeling all over me" and a zombie-like feeling, and requested that the Court permit her to stop receiving the injections.

4

At the conclusion of the hearing, the Commissioner ordered that the involuntary outpatient treatment would continue.

(10) Brown appealed the Commissioner's order, and on August 7, 2018 a judge of the Superior Court affirmed. Brown now appeals to this Court.

(11) The Commissioner's July 20, 2018 order consists of one-half of a page of notes about Dr. Capiro's testimony and a check-the-box form with preprinted legal conclusions and authorization for involuntary treatment. The Superior Court summarily affirmed the Commissioner's order. Although these are not the ideal circumstances for this Court's review of the Superior Court's findings of fact and conclusions of law, it appears from the order and the record as a whole that the Commissioner's factual findings were sufficiently supported by the evidence and that the legal requirements for Brown's involuntary treatment were satisfied.[2]

(12) The involuntary commitment statute provides:

A person shall be involuntarily committed by the court for outpatient treatment over objection only if all of the following criteria are satisfied by clear and convincing evidence:

(1) The person is 18 years of age or older.
(2) The person has a documented mental condition.
(3) The person is reasonably expected to become dangerous to self or dangerous to others or otherwise unlikely to survive safely in the community without treatment for the person's mental condition.

---

[2] *Cf. Jamison v. Division of Family Servs.*, 2011 WL 257810, at *3 (Del. Mar. 8, 2001) (discussing the standard of review applicable to an appeal from an order terminating parental rights, which requires a clear and convincing standard of proof).

(4) The person is currently refusing to voluntarily participate in the treatment plan recommended by the person's mental health treatment provider or lacks the capacity to determine whether such treatment is necessary.

(5) The person has a documented history of lack of adherence with recommended treatment for the mental condition, or poses an extreme threat of danger to self or danger to others based upon recent actions, that has either:

    a. Resulted in a deterioration of functioning that was observed to be dangerous to the individual's personal health and safety; or

    b. Resulted in a deterioration of functioning that was observed to be imminently dangerous to self or dangerous to others, including but not limited to suicidal ideation, violent threats, or violence towards others.

(6) All less restrictive treatment options have been considered and have either been determined to be clinically inappropriate at this time or evidence is offered to show that the person is not likely to adhere to such options.[3]

(13) The Court concludes that each of the statutory requirements is sufficiently supported by the record. First, Brown is over 18 years of age. Second, at the July 20, 2018 hearing, Dr. Capiro testified regarding Brown's diagnosed mental conditions, including paranoid personality disorder and schizoaffective disorder, bipolar type. Third, Dr. Capiro testified that Brown was reasonably expected to become dangerous to herself or others without treatment; he specifically cited her history of walking into traffic and overdosing on medications. Fourth, Dr. Capiro testified that Brown refused to voluntarily take injectable medications, which

---

[3] 16 *Del. C.* § 5013(a).

was the only effective means to treat her under the circumstances. Fifth, Dr. Capiro testified that he had tried to treat her with oral medications, but Brown had been either noncompliant or had not taken the correct doses; he further testified that following Brown's prior commitments, she had stopped treatment and her condition had deteriorated, and that there was no likelihood of voluntary compliance. Finally, Dr. Capiro testified that involuntary outpatient treatment was the least restrictive option, given Brown's history and past noncompliance with other treatments. The record also reflects that Dr. Capiro's testimony was consistent with the findings of two other psychiatrists who evaluated Brown just a few months earlier and also recommended her involuntary commitment.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

7